**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

MARK KEZY and AMY KEZY,

          Plaintiffs,

          v.                    CAUSE NO.: 2:22-CV-91-TLS

STATE FARM FIRE AND CASUALTY
COMPANY,

          Defendant.

**OPINION AND ORDER**

This case arises out of the insurance claim of Plaintiffs Mark Kezy and Amy Kezy to

Defendant State Farm Fire and Casualty Company for roof damage resulting from a hailstorm in

Valparaiso, Indiana, in April 2020. On February 24, 2022, the Plaintiffs filed a Complaint in the

Porter County, Indiana, Circuit Court, which the Defendant removed to this federal court on

April 13, 2022. ECF Nos. 4, 5. In their Complaint, the Plaintiffs allege that: (1) the Defendant

breached the homeowners' insurance policy that they had with the Defendant by failing, among

other things, to pay a binding appraisal award (breach of contract claim); and (2) they seek

prejudgment interest on the appraisal award. Compl., ECF No. 5, pp. 5–7. The Plaintiffs also

allege that the Defendant breached the covenant of good faith (bad faith claim). *Id.*, ¶ 21. This

matter is now before the Court on: (1) the Plaintiff's Motion for Partial Summary Judgment

[ECF No. 41], filed on April 21, 2025; and (2) the Defendant's Motion for Partial Summary

Judgment [ECF No. 45], filed on May 27, 2025. These are briefed and ripe for ruling.[1]

---

[1] On May 27, 2025, the Defendant filed its brief in support of its motion also including a response in opposition to the Plaintiffs' motion [ECF No. 48], to which, on July 1, 2025, the Plaintiffs filed a reply [ECF No. 51] also including a response to the Defendant's motion. On July 18, 2025, the Defendant filed a reply [ECF No. 54].

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted).

With cross-motions for summary judgment, a court must construe all facts in a light most favorable to the party against whom the motion under consideration is made. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## BACKGROUND AND MATERIAL FACTS[2]

Plaintiffs Mark and Amy Kezy are a married couple residing in Porter County, Indiana. Pl. Ex. 7, ¶¶ 1–3, ECF No. 42-8. They own a residence located at 636 N 125 W, Valparaiso, Indiana. *Id.*, ¶ 3. The Defendant State Farm Fire and Casualty Company is an Illinois-based insurance company, licensed to issue homeowners insurance policies in the state of Indiana. ECF No. 47, p. 2.

On April 7, 2020, the Plaintiffs and their residence were subject to a homeowners insurance policy issued by State Farm under Policy Number 14-LB 79181. Pl. Ex. 1, ECF No. 42-1. The policy term was from August 16, 2019, through August 16, 2020. Pl. Ex. 10, 13:24–14:3, ECF No. 42-11. The policy is considered an "all risk policy," as it covers all accidental direct physical loss unless excluded by other provisions of the policy. *Id.*, 14:19–15:16.

The loss settlement provision under the policy is for replacement cost with similar construction. *Id.*, 15:23–17:1. Specifically, the policy's settlement provision provides:

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

**COVERAGE A – DWELLING**

1. **A1 - Replacement Cost Loss Settlement -
   Similar Construction.**

   a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

   (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

---

[2] The Court disregards substantive arguments and characterization of evidence in the fact statements and considers the facts only as supported by the cited evidence of record.

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed . . . .

Pl. Ex. 1, p. 22 of 46.

Further, the policy includes an appraisal provision for resolving disputes over the amount of loss, as follows:

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

*Id.*, p. 25 of 46.

The policy further provides the following regarding the payment of a loss under the policy:

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:
a. reach agreement with you;
b. there is an entry of a final judgment; or
c. there is a filing of an appraisal award with us.

*Id.*

On April 7, 2020, a hail and windstorm struck the Northwest Indiana area, including Valparaiso, Indiana, causing significant damage to homes and businesses throughout the community. Pl. Ex. 8, ¶ 16, ECF No. 42-9. After the storm, the Defendant declared a catastrophe to bring in additional claims adjusters due to the volume of claims they anticipated from the storm. Pl. Ex. 12, 9:9–11:16, ECF. No. 42-13.

In the fall of 2020, the Plaintiffs asked a contractor—All Square Roofing—to inspect their residence, and the contractor reported that the Plaintiffs' residence had hail damage from the storm. Pl. Ex. 7, ¶ 8. The Plaintiffs made a claim to the Defendant for loss to the residence for hail and wind damage from the storm, and the Defendant assigned it Claim Number 14-14L3-50S. *Id*., ¶ 9. The Defendant maintains that the damage to the Plaintiffs' roof was instead from wear and tear. Compl. ¶ 24 n.1, ECF No. 5.

In a letter dated December 23, 2020, the Defendant acknowledged that it prepared an estimate of the loss for the claim from minimal storm damage which totaled $3,324.87. Pl. Exs. 2, 2-1, ECF Nos. 42-2, 42-3. In the letter, the Defendant asserted that the loss did not exceed the deductible. Pl. Ex. 2.

On May 12, 2021, the Plaintiffs sent a letter to the Defendant demanding that it submit the claim for appraisal under the appraisal provision contained in the policy. Pl. Ex. 3, ECF No. 42-4; Pl. Ex. 7, ¶ 12. The purpose of the appraisal was to resolve the differences between the Defendant's estimate and the Plaintiffs' estimate and determine the amount of loss for the claim. Pl. Ex. 10, 48:13–49:20. The Plaintiffs' letter demanded that "the value of the whole loss be appraised" as provided for in the policy and named Ben Perry as their appraiser. Pl. Ex. 3; Pl. Ex. 10, 12:5–7, 34:7–14. Plaintiff Amy Kezy testified that she obtained Perry's name from All Square Roofing. Def. Ex. 1, 27:3–6, ECF No. 46-1. She also testified that Perry would be paid by All Square Roofing if the Plaintiffs "got the award" and All Square Roofing replaced the roof.

*Id*., 27:7–23. She further testified that she and her husband have not paid Perry for his appraisal because she has not been invoiced. *Id*., 27:24–25. And Perry testified that 60–65% of his appraisal business in Indiana came from All Square Roofing. Def. Ex. 2, 36:23–37:6, ECF No. 46-2.

On June 14, 2021, the Plaintiffs' claim was then directed by the Defendant to its Centralized Investigative Team (CIT), which handled all the Defendant's weather-related appraisals. Pl. Ex. 10, 11:3–23. Ginger Franks was assigned the Plaintiffs' claim for CIT. *Id*., 9:15–10:8, 12:2–4. Luis Almodovar was the team manager for CIT. Pl. Ex. 11, 5:16–23, ECF No. 42-12.

On June 17, 2021, the Defendant through Mr. Almodovar sent a letter to the Plaintiffs acknowledging the demand for appraisal; identifying Tony Mitchell as the Defendant's appraiser; and further stating that "[w]e intend to timely pay an appraisal award for covered damage following a properly conducted appraisal." Pl. Ex. 4, ECF No. 42-5. Also on that date, the Defendant sent an email to Mitchell, along with multiple attachments, including the estimates prepared by the Defendant and the one prepared by the Plaintiffs' contractor. Pl. Ex. 10, 36:4–12. The two appraisers, Perry and Mitchell, appointed Dennis Keiser as the umpire. Pl. Ex. 8, ¶ 18.

On July 15, 2021, Mitchell inspected the Plaintiffs' residence. Def. Ex. 3, KEZYM00003490PROD, ECF No. 46-3. On July 27, 2021, Mitchell prepared an estimate for repairs to the flue cap, chimney, and gutter totaling $4,368.47. *Id*., KEZYM00003490PROD, KEZYM00003494PROD. He noted "no visible hail damage bruising to the shingle mats, no missing shingles and no signs of any storm damage to the dimensional shingles on the two story gable roof. The shingles have evidence of major wear, tear and deterioration." *Id*., KEZYM00003491PROD.

On September 18, 2021, Perry inspected the Plaintiffs' residence and took photographs. Pl. Ex 8, ¶ 20. On September 25, 2021, Perry prepared an estimate for repairs for the damage from the storm totaling $57,540.96 and submitted by email the estimate with his photographs to Mitchell and Keiser. *Id.*, ¶ 22.

After Mitchell and Perry were unable to come to an agreement as to an amount of loss, Keiser was notified that he was to serve as the umpire. Pl. Ex. 9, ¶¶ 9, 12, ECF No. 42-10. Before Keiser inspected the residence, he was provided with itemized Xactimate estimates for the loss prepared by Mitchell and Perry. *Id.*, ¶ 13. In addition, Perry also provided a damage report with more than 200 photos of the residence. *Id.* On October 5, 2021, Keiser inspected the residence and took photographs. *Id.*, ¶ 14. On October 5–6, 2021, Keiser prepared an Xactimate estimate for repairs for the damage from the storm. *Id.*, ¶ 15. On October 6, 2021, Keiser emailed Perry and Mitchell with a summary of his findings from his inspection of the residence and attached a proposed appraisal award based on his findings with his signature, and an itemized estimate supporting the same. *Id.*, ¶ 16. In that email, Kaiser stated:

> I did find hail bruising and some hail break through hits on valleys and ridge caps, as well as numerous areas on the main slope. I found ten hits per square on the slopes on the main home and 3–5 on the edges on the outbuildings, part of those were under trees.

*Id.*, ¶ 17. Upon his review and consideration of Keiser's estimate and proposed appraisal award, Perry—as appraiser for the Kezys—agreed and signed the proposed appraisal award, on October 6, 2021. Pl. Ex. 8, ¶ 24.

The signed appraisal award set the amount of loss for the claim from hail damage as follows:

| COVERAGE TYPE | REPLACEMENT COST | ACTUAL CASH VALUE | Initial each line if agreed |
|---|---|---|---|
| Building Coverage | $38,052.70 | 19,799.75 | DK |
| Code | $2,673.26 | | DK |
| | | | |
| | | | |
| | | | |
| Total | $40,725.96 | | DK |

Pl. Ex. 5, ECF No. 42-6; *see also* Pl. Ex. 8, ¶ 25; Pl. Ex. 9, ¶ 20.

On October 8, 2021, Perry emailed a signed copy of the appraisal award to Mitchell, who agreed to provide the same to the Defendant. Pl. Ex. 8, ¶ 27. On October 9, 2021, Mitchell sent by email a copy of the appraisal award and supporting documentation to Franks. Pl. Ex. 10, 56:5–15. On October 12, 2021, Franks noted receipt of the appraisal award. *Id.*, 68:24–69:3. Two weeks later, Franks and Almodovar reviewed the award package, and Franks commented that the appraisal award differed from what the Defendant had concluded regarding the damage to the roof. *Id.*, 69:5–24. Perry sent follow-up emails to the Defendant asking about the status of payment on November 4, 2021, and November 11, 2021, but the Defendant failed to provide a substantive response. Pl. Ex. 8, ¶ 29.

And the Defendant did not deny coverage for the claim until it received the appraisal award. Pl. Ex. 11, 22:23–23:4, 32:22–33:1. On December 14, 2021, Almodovar—on behalf of the Defendant—sent an appraisal award response letter to the Plaintiffs which acknowledged receipt of the appraisal award but only issued payment for $55.57. Pl. Ex. 6, ECF No. 42-7; Pl, Ex. 7, ¶ 15; Pl. Ex. 11, 42:6–16. In the letter, Almodovar stated, in part:

> State Farm Fire and Casualty Company [the Defendant] has received the signed "Appraisal Award Form" and supporting itemized estimate for the above-referenced claim. The award states that the loss and damage to your property have a replacement cost value of $38,052.70 (plus $2,673.26 for code upgrades) and an actual cash value of $19,799.75. The award was "made without consideration of the deductible" and is "subject to all terms, conditions, and exclusions of the above listed policy." Thus, under its Reservation of Rights dated June 16, 2021, State Farm [the Defendant] has examined the appraisal award estimate and analyzed

8

> whether the line items in it are covered or excluded by the policy. For the reasons explained below, the policy does not provide coverage for the line items associated with removing and replacing the shingles on the dwelling, the shed, and the playhouse.
>
> . . .
>
> On December 23, 2020, State Farm [the Defendant] physically inspected your property and found no hail-related or wind-related damage to the deck, the shingles on the dwelling roof or the shed roof. Rather, the shingles had widespread granule loss consistent with wear, tear, and deterioration resulting from normal weathering over the years. Because the policy excludes coverage for loss caused by or consisting of wear, tear, and deterioration, the policy provides no coverage for the costs and code upgrades associated with removing and replacing the shingles on the dwelling or shed. As a result, those costs and upgrades included in the appraisal award estimate are not payable under the policy.

Pl. Ex. 6.

The applicable deductible for the claim under the homeowners policy was $3,355.00. Pl. Ex. 1, p. 2 of 46. The net replacement cost value owed by the Defendant for the claim was $37,370.96, and the amount actually paid by the Defendant was $55.57. Pl. Exs. 5, 6.

### ANALYSIS

The Plaintiffs move for summary judgment on their claim for breach of contract against the Defendant for failure to pay the net appraisal award—as set forth in their insurance policy with the Defendant—for roof damage at their residence incurred from a hailstorm in April 2020. The Plaintiffs also move for summary judgment on their request for prejudgment interest on the net appraisal award. The Defendant moves for summary judgment on the Plaintiffs' claims against it for breach of contract and bad faith. The Court addresses each motion in turn.

**A.    Plaintiff's Partial Motion for Summary Judgment**

*1.    Breach of Contract*

The Plaintiffs argue that the Defendant breached the insurance policy's appraisal provision by not paying the appraisal award. To show the Defendant breached the insurance policy, which is an insurance contract, the Plaintiff must show the existence of the insurance

9

policy, the Defendant's breach of the insurance policy, and damages. *See Villas at Winding Ridge v. State Farm Fire & Cas. Co.*, 942 F.3d 824, 830, 831 (7th Cir. 2019) (citing *Shifrin v. Liberty Mut. Ins.*, 991 F. Supp. 2d 1022, 1043 (S.D. Ind. 2014); *Auto-Owners Ins. Co. v. C & J Real Est., Inc.*, 996 N.E.2d 803, 805 (Ind. Ct. App. 2013)).[3] "Indiana courts have repeatedly enforced appraisal clauses in insurance [policies]." *Id*. at 830 (citing *Philadelphia Indem. Ins. Co. v. WE Pebble Point*, 44 F. Supp. 3d 813, 817 (S.D. Ind. 2014); *Shifrin*, 991 F. Supp. 2d at 1038). This is because, under Indiana law, "[a]n insurance policy that is unambiguous must be enforced according to its terms . . . ." *Sheehan Const. Co. v. Cont'l Cas. Co*., 935 N.E.2d 160, 169 (Ind. 2010). And unambiguous terms are "given their plain and ordinary meaning." *Vesuvius USA Corp. v. Am. Com. Lines LLC*, 910 F.3d 331, 333 (7th Cir. 2018) (quoting *Brockmann v. Brockmann*, 938 N.E.2d 831, 834 (Ind. Ct. App. 2010)). Here, the parties do not dispute the existence of an insurance policy or that its terms were unambiguous.

The insurance policy provision at issue states that if the parties disagree on the amount of loss "either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. . . . The two appraisers shall then select a competent, impartial umpire." Pl. Ex. 1, ECF No. 42-1, p. 25 of 46. The policy provision also states, "The appraisers shall then set the amount of the loss. . . . If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss." *Id*.

The parties do not dispute that the date of loss is April 7, 2020, the Plaintiffs demanded an appraisal, and the Defendant accepted the demand. They also do not dispute that, as is

---

[3] The parties agree that Indiana substantive law applies to this contract dispute brought under the Court's diversity jurisdiction. *See Jeffords v. BP Prods. N. Am., Inc.*, 963 F.3d 658, 661 (7th Cir. 2020) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426–27 (7th Cir. 1991)).

required under the policy, both the Plaintiffs and the Defendant selected an appraiser; the parties'

appraisers disputed how much hail damage the Plaintiffs' roof sustained; the Plaintiffs' appraiser

estimated $57,540.96; the Defendant's appraiser estimated $4,368.47; following the policy's

appraisal provision, the parties selected an umpire and presented their estimates to him; the

umpire resolved the dispute by awarding $40,725.96 for damage from hail to the Plaintiffs' roof;

both the Plaintiffs' appraiser and the umpire signed the appraisal award; and the Defendant has

paid only $55.57 of the appraisal award.

The parties disagree on whether the appraisal award signed by the umpire and the

Plaintiffs' appraiser became binding under the policy. The Defendant argues that the award was

not binding because the policy requires that the Plaintiffs select a disinterested appraiser, and the

Plaintiffs' appraiser was not disinterested. "The Courts of Indiana will not hesitate to set aside an

appraisal award if it is tainted with . . . partiality for appraisers, though selected by the respective

parties, must act free from bias, partiality, or prejudice in favor of either of the parties." *Atlas

Const. Co. v. Ind. Ins. Co.*, 309 N.E.2d 810, 813 (Ind. Ct. App. 1974) (cleaned up).

Here, the Defendant argues that the Plaintiffs' appraiser was not impartial because he had

a "financial interest" in that he has not yet been paid by the Plaintiffs, would be paid by the

Plaintiffs' roofing contractor if the Plaintiffs received the appraisal award, and 60–65% of his

business came from the Plaintiffs' roofing contractor. In support, the Defendant cites *Shree Hari

Hotels, LLC v. Society Insurance*, No. 1:11-CV-1324, 2013 WL 4777212, at *2 (S.D. Ind. Sept.

5, 2013). In *Shree Hari Hotels, LLC*, the court determined the appraiser had a financial interest in

the outcome of the appraisal where the appraiser had an hourly rate of $250 and his maximum

fee was capped at 10% of the appraisal award because the appraiser "had a financial incentive to

make his appraisal exceed $468,750" to ensure he made his hourly rate for working an estimated

187.5 hours. *Id.* As highlighted by the Plaintiffs, unlike in *Shree Hari Hotels, LLC*, in this case,

the Defendant has not shown how the facts establish that the Plaintiffs' appraiser had a financial incentive to make the appraisal larger than it otherwise would have been. Thus, the Court finds the Defendant's citation to *Shree Hari Hotels, LLC* unpersuasive in this case and that the Defendant has not established that the Plaintiffs' appraiser was not disinterested.

The Defendant's second argument is that the appraisal was not binding because the umpire could not determine the issue of the cause of the Plaintiffs' roof damages, such as whether their roof damage was from hail. However, the Seventh Circuit Court of Appeals has previously determined, under Indiana law, that it is proper for an umpire to decide the amount of hail damage to a roof. *See Villas at Winding Ridge*, 942 F.3d at 831; *Mesco Mfg., LLC v. Motorists Mut. Ins. Co.*, 145 F.4th 705, 710 (7th Cir. 2025) ("As it was proper in *Villas* for the umpire to decide the amount of hail damage to the roofs, it was proper for Umpire Myers to decide the amount of hail damage to Mesco's roofs.").

Accordingly, the Court finds that the Plaintiffs have established that there is no genuine dispute of material fact that the appraisal award became binding, and, therefore, the Defendant breached the policy's appraisal provision by paying only $55.57 of the $40,725.96 appraisal award (signed by the umpire and the Plaintiffs' appraiser), which, after accounting for the Plaintiffs' $3,355.00 deductible, totals $37,370.96. Because the Defendant only raises an argument about whether the hail damage occurred on the date of loss (April 7, 2020) in a footnote in its reply brief in the context of the Plaintiffs' bad faith claim, *see* Def. Reply Br. 7 n.1, ECF No. 54, the Court need not address the argument in the context of whether the appraisal award was binding, *see Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). The Court notes that the Defendant does not provide an alternative amount to the $37,370.96 binding appraisal award set forth by the Plaintiffs and, thus, the Court need not consider an

alternative amount. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." (citation omitted)).

2.     *Prejudgment Interest*

The Defendant does not dispute that, pursuant to Indiana law, the Plaintiffs are entitled to prejudgment interest at a rate of 8% from December 8, 2021, until the date of judgment, on the $37,370.96 owed to the Plaintiffs on the binding appraisal award. *See Song v. Iatarola*, 76 N.E.3rd 926, 939 (Ind. Ct. App. 2017); Ind. Code §§ 24-4.6-1-101, 103(b). Thus, the Court grants the Plaintiffs' motion as to prejudgment interest at the rate of $8.19 per day from December 8, 2021, through the entry of judgment in this case on March 24, 2026, in the sum of $12,833.73.

**B.     Defendant's Motion for Summary Judgment**

1.     *Breach of Contract*

As set forth above in Section A(1), the Plaintiffs have offered evidence to show that the Defendant breached the insurance policy by failing to pay the binding appraisal award. Thus, the Court denies the Defendant's Motion for Partial Summary Judgment as to the Plaintiffs' breach of contract claim against it.

2.     *Bad Faith*

The Defendant argues that the Plaintiffs do not have evidence to show the Defendant acted in bad faith in dealing with the Plaintiffs during the dispute over the insurance claim at issue.

"Under Indiana law, insurers are required to deal in good faith with their insureds." *See Villas at Winding Ridge*, 942 F.3d at 833 (citing *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993)). "An insurer can breach that duty by, for example, '(1) making an unfounded refusal

13

to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.'" *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1045–46 (7th Cir. 2026) (quoting *Erie Ins. Co.*, 622 N.E.2d at 519). "To prove bad faith, the plaintiff[s] must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability." *Villas at Winding Ridge*, 942 F.3d at 833 (quoting *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002)).

Additionally, "[a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 626 (7th Cir. 2022) (cleaned up). This means that the "Plaintiffs are also required to prove an insurer's conscious wrongdoing or culpable mental state." *Villas at Winding Ridge*, 942 F.3d at 833 (cleaned up). Establishing the requisite mental state for a bad faith claim "is a high burden of proof." *Id*. (citing *Inman v. State Farm Mut. Auto. Ins. Co.*, 981 N.E.2d 1202, 1207 (Ind. 2012)).

Here, although, in their summary judgment brief and reply, the Plaintiffs set forth rule statements on the elements of a bad faith claim with detailed descriptions and citations, they then separately list several facts and excerpts from the opinion of their bad faith expert that they assert establish bad faith without providing an analysis or explanation of how the evidence they cite supports finding an inference of bad faith. The Plaintiffs also do not specifically identify the facts that they assert establish the requisite mental state let alone provide an analysis or explanation of how the evidence supports finding such an inference. Consequently, any arguments on the potential bad faith and the corresponding mental state of the Defendant are waived. *See Mahaffey*, 588 F.3d at 1146; *Holm*, 326 F.3d at 877.

Accordingly, because the Plaintiffs have not established a genuine dispute of material fact as to their bad faith claim, the Court grants the Defendant's Motion for Partial Summary Judgment as to the Plaintiffs' bad faith claim against it. Thus, the Court need not address the Defendant's evidence of good faith.

## CONCLUSION

Based on the foregoing, the Court hereby:

(1) GRANTS the Plaintiffs' Motion for Partial Summary Judgment [ECF No. 41] on the Plaintiffs' breach of contract claim against the Defendant for the $37,370.96 owed on the binding appraisal award and prejudgment interest of 8% ($8.19 per day) on the $37,370.96 from December 8, 2021, until the date of judgment of March 24, 2026, in the sum of $12,833.73; and

(2) DENIES in part and GRANTS in part the Defendant's Motion for Partial Summary Judgment [ECF No. 45]. The Court DENIES the motion as to the Plaintiffs' breach of contract claim against it. The Court GRANTS the motion as to the Plaintiffs' bad faith claim against it.

There being no claims remaining between any parties, the Court DIRECTS the Clerk of Court to ENTER FINAL JUDGMENT stating:

> Final judgment is entered in favor of the Plaintiffs Mark Kezy and Amy Kezy and against the Defendant State Farm Fire and Casualty Company on the Plaintiffs' breach of contract claim against the Defendant for the $37,370.96 owed on the binding appraisal award and prejudgment interest of 8% ($8.19 per day) on the $37,370.96 from December 8, 2021, until the date of judgment of March 24, 2026, in the sum of $12,833.73.
>
> Final judgment is entered in favor of the Defendant State Farm Fire and Casualty Company and against the Plaintiffs Mark Kezy and Amy Kezy on the Plaintiffs' bad faith claim against the Defendant.

SO ORDERED on March 24, 2026.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT